OPINION OF THE COURT
Joseph Harris, J.
Defendant moves to suppress certain tangible property allegedly illegally seized from the person of the defendant by law enforcement officials, and to suppress certain statements made by the defendant to said law enforcement officials.
The facts are as follows:
*817 On September 10, 1978, Officer Barbato and his partner, both police officers with the Albany Police Department, were investigating a burglary that allegedly had occurred earlier that day at Brooks Doughnuts at 176 Northern Boulevard in the City of Albany.
About 10:05 p.m. that evening the officers observed the defendant standing in front of the Golden Door Bar and Grill at the corner of Second Street and Northern Boulevard. They approached the defendant, stated they would like to talk with him, and asked him if he would accompany them to Arbor Hill Police Station. The defendant agreed. Officer Barbato then and there read him all required Miranda warnings; the defendant stated that he understood his rights, and voluntarily waived same, agreeing to talk to the officer.
The defendant voluntarily accompanied the officers to the police station. At the police station he was asked if he- would empty his pockets; he voluntarily consented to do so. Compliance with this request revealed certain coins which were purportedly the subject of the burglary. Thereafter, the defendant made inculpatory statements and admissions concerning the burglary, after which he was placed under arrest. Officer Barbato testified that prior to his being placed under arrest, the defendant was not in custody and was free at all times to go.
The defendant argues that People v De Bour (40 NY2d 210) governing police-citizen confrontations in public places is applicable here — that what occurred at the very least was "a purported common-law right to inquire which must be activated by a founded suspicion that criminal activity was afoot.”
But not every contact or conversation between police and citizens in public places is a "street encounter” or "confrontation” giving rise to the Fourth Amendment considerations that are the subject of the De Bour guidelines.
Initially there must be a significant intrusion into the citizen’s privacy, for it is the protection of that privacy that is the raison d’etre of the Fourth Amendment (Katz v United States, 389 US 347, Terry v Ohio, 392 US 1, People v De Bour, supra).
The contact between the police and the defendant involved in this case can best be characterized as a nonintrusive "subDe Bour” contact. It is not an intrusion into a citizen’s protected area of privacy for a police officer to say "good *818 morning” to a citizen on the street. Neither is it an intrusion into a citizen’s protected area of privacy for a police officer to ask a citizen in a public place if he would accompany him to a police station for questioning, so long as it is clear that the citizen need not consent and is free to go about his business if he does not consent.
In the instant case the defendant was standing in front of a bar when he was approached and asked by police officers, whom he knew, if he would accompany them to the police station. He was not "stopped” by the officers, nor was he questioned as to what he was doing there. He was not degraded or humiliated or harassed by anything the police did. What occurred was nothing more than if the same query had been made of him by the police by telephone or by mail. The mere fact that the police happened upon him on the street and the query was placed there rather than by telephone, did not create Fourth Amendment rights where otherwise they would not exist. In the constant struggle to balance the important need of crime investigation and the important right of private citizens to privacy, the police action in the instant case was reasonable.
Thus the inception of this incident did in no way taint the validity of the subsequent seizure and statements. With respect to the seizure of tangible property from the defendant’s pockets, the court finds by a preponderance of the evidence that same was valid as a result of the consent of the defendant, which consent was knowing, intelligent and voluntary. Accordingly, the motion to suppress said tangible property is denied. With respect to the incriminating statements made by defendant to the police, the court finds beyond a reasonable doubt that before such statements were made, the police fully and properly advised the defendant of his Miranda rights, that he understood these rights, and that he knowingly, intelligently and voluntarily waived these rights; the court further finds beyond a reasonable doubt that the statements were made voluntarily and upon the defendant’s own free will and volition, and were not the product of force, coercion, promises, or undue influence. Accordingly, the motion to suppress statements made by the defendant to law enforcement officials is denied.